No. 1379.—A. T. B. MERRITT *v.* AMI MERLE et al.—A. T. B. MERRITT
*v.* EUGENIE MERLE et al.

;Where the evidence shows that a purchaser of real estate has at the time, and before the pur-
chase, full knowledge of a suit brought by the United States for a large portion of the land
purchased, he can not set up in defense to the payment of the price that he is in
danger of eviction by such suit, and obtain immunity from the enforcement of the con-
tract, ·ntil the suit is decided. The knowledge of the existence of such a suit before the
·· purchase forms an exception to the rule laid down in article 2535 of the Civil Code.

An intervenor, who has purchased the land from the vendee and claims to defend the title of
his ve dor, can not urge the existence of such a suit against the demand of the original
vendor for the payment of the price.

The prescription of five years does not apply to an obligation to pay money contained and
ex ressed in the act of sale. In such a case the prescription of ten years is applicable. C.
C. 35 8; 3 An. 46; 13 An. 294.

·Obligations given for the purchase of land and slaves can only be enforced against the land in
proportion to the value of each at the date of the purchase: and where judgment has been
rendered in the court below for the whole am )unt, the cause will be remanded for the pur-
pose of ascertaining, by evidence, the value of each at the time.

APPEAL from the Second Judicial District, parish of St. Bernard.
Cazabat, J. C. Dufour, for appellants. G. LeGardeur and E. A.
Ducros, for appellees.

TALIAFERRO, J. This is an appeal taken from a judgment rendered
by the district court in each of the above cases, dissolving, with dam-
.ages, the injunctions therein taken out by the plaintiff.

In June, 1847, A. H. Phillippon and J. Ami Merle, the latter as the
natural tutor of his minor children, Ami, Eugenie, Oscar and Corinne,
and as executor of Alfred Phillippon, sold to James McMasters an
·extensive body of land, embracing a large plantation, and sixty-three
slaves. It was agreed that the portion of the price which accrued to
the minors should be severally paid to them as they respectively
attained the age of majority. This large property was sold in March,
1856, by McMasters to R. A. Stewart, who assumed the payment of the
installments to the minors at the periods stipulated by McMasters. In
September, 1859, Stewart sold the property to Merritt, who bound him-
self personally to pay the minors, at a time then fixed by an extension
of the period of payment, as settled by the contract with McMasters.
But, before this extension of time in favor of ·Merritt, two of the
minors, Ami and Oscar, had become of age, and they took out execu-
tory process to enforce payment of their shares of the purchase price
of the property. This took place in April, 1858. Stewart enjoined
the seizure, and the suit was undetermined at the time of the sale to
Merritt. All further proceedings in the matter seem to ·have been
suspended by the war. In May, 1865, a motion was made in court by
the defendants in injunction to have it set aside. On the fifteenth of
June, before any action was taken on this motion,- Merritt intervened
in the injunction suit, alleging that. " he had purchased the land in
controversy from Stewart; that he is now the owner and in possession
of the property. He, therefore, prays to intervene and defend the

33 .

title and claim of said Stewart, and the proceedings now pending herein."

The injunction was dissolved and an *alias* writ issued in January, 1866. This, Merritt enjoined, as he, also, did an order of seizure and sale taken out in May following by the other two heirs. The ground taken by Stewart in the injunction sued out by him was, that a suit had been instituted by the United States for about five thousand acres of the land bought by McMasters, and subsequently sold to him by McMasters, and that he was in danger of eviction. Merritt set up the same ground in the injunction taken by him against the *alias* writ of seizure and sale issued at the instance of Ami and Oscar Merle, and, in addition, that Knapp, under a sale to him from the State, of a portion of the land embraced in the sale to McMasters, was cutting and removing wood from the land, and causing great damage to the petitioner. The same grounds were taken in the injunction against the order of seizure and sale obtained by Eugenie and Corinne Merle; except, in the latter case, he set up the plea of prescription. Knapp, it appears from an injunction taken by him against Merritt, to restrain him from interfering with his operations in cutting and removing timber from a portion of the land, set out in his petition that he had purchased from the State two thousand two hundred and forty-six acres of the land in question, and that he had been in peaceable possession of the same from October, 1864.

The suit alleged by Merritt to have been instituted by the United States, for a large part of the land included in the sale to McMasters, was commenced in the United States Circuit Court on the twentieth of November, 1851, and was finally decided against the United States by the court in the last resort, in December, 1866. See Wallace Report, vol. 4, p. 680.

It is shown that at and before the time of the purchase of Stewart from McMasters, Stewart was fully aware of the suit then pending by the United States claiming a portion of the lands included in the purchase he was about to make. The Phillipon grant, the landed estate conveyed by these sales, contains about twelve thousand arpents, extending from its front on the Mississippi river to Lake Borgne.

The United States claimed in the suit referred to about five thousand arpents of this large survey and which, as we infer, covered the lands claimed by Knapp under title derived from the State of Louisiana. Stewart purchasing with knowledge of the existence of this suit, could not avail himself of the provisions of article 2535 of the Civil Code. That article reads: "If the buyer is disquieted in his possession or has just reason to fear that he shall be disquieted by an action of mortgage, or by any other claim, he may suspend the payment of the price until the seller has restored him to quiet possession, unless the

seller prefer to give security. There is an exception to this rule when the buyer has been informed, before the sale, of the danger of eviction." Merritt, by intervention in the injunction suit and claiming " to defend the title and claim of Stewart," was bound by the judgment rendered in that case, and the question arises, is he not precluded by the exception *rei judicata* from setting up the same ground in his application to enjoin the *alias* order of seizure and sale issued by Ami and Oscar Merle? True, he adds the additional ground that he was disturbed by the claim of Knapp holding title to a part of the land from the State. We are satisfied that the validity of Knapp's title depended upon that of the United States ; for the State could only derive title from the United States ; and that failing, the right set up by Knapp would necessarily fail as being derived from a vendor without title. There was therefore no new grounds set forth in the petitions for these injunctions obtained by Merritt. The plea of prescription is wholly groundless. The suit of Eugenie and Corinne Merle was not founded on notes as pretended, but upon the written obligation to pay, contained in the deed of sale of sixteenth September, 1859. The plea of prescription of five years is therefore not applicable. 3 An. 46 ; 13 An. 294.

The obligations of the plaintiffs in injunction were for the price of land and slaves. They can only be enforced against the land mortgaged.

It is therefore ordered that the judgment of the district court dissolving the injunction be annulled and set aside. It is further ordered that this case be remanded to the court of the first instance, with instructions to reopen it, so far as to ascertain, by proper proceedings, to be taken for that purpose, the value of the slaves sold, at the time the contract was entered into, and which form a component part of the consideration stipulated for the entire purchase of both land and slaves. It is further ordered that when the value of the slaves shall have been so ascertained, and the deduction thereof made as herein directed, payment of the remainder be enforced by sale of the land mortgaged and under seizure.

It is further ordered that the costs in the lower court be paid by the plaintiffs and appellants, and those of the appeal by defendants and appellees.

Mr. Justice Howe recused.